**Barbara KIRWIN, Plaintiff,**

v.

**NEW YORK STATE OFFICE OF MENTAL HEALTH, Dr. Steven Katz, Eileen Schmitz, Sam Herman, Sam Markow, Larry Kotkin, Loretta Fox, Dr. Safa Sarabeyilou, "John Does", denoting persons presently unknown to plaintiff, individually and in their official capacities, Defendants.**

**No. 86 CV 3962.**

United States District Court, E.D. New York.

July 25, 1987.

Block & Hamburger, Smithtown, N.Y. by Frederic Block and Richard Hamburger, for plaintiff.

Robert Abrams, Atty. Gen., State of N.Y., New York City by Frederic L. Lieberman, Asst. Atty. Gen., for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants move pursuant to Federal Rule of Civil Procedure 12(b) to dismiss plaintiff's Title VII and pendent State claims and to dismiss, in part, plaintiff's claim under 42 U.S.C. § 1983. For the reasons set forth below, defendants' motion is granted in part and denied in part.

Plaintiff alleges in her complaint as follows:

On March 5, 1984, Robert Venegas, a patient at Creedmore Hospital, was found dead in the Secure Unit of the hospital. Complt. at ¶ 27. A therapy aid was charged with manslaughter. Complt. at ¶ 28. Plaintiff's present claims arise out of the events following Venegas's death.

Plaintiff, an associate psychologist at Creedmore Hospital, is employed by the Office of Mental Health ("OMH"), an executive agency of the State of New York. Complt. at ¶¶ 2, 3. She has the permanent rank of Associate Psychologist II. Complt. at ¶ 14. Between August 1980 and October 1982, plaintiff was the Acting Unit Chief of the Secure Unit with the provisional rank of "Team Leader." Complt. at ¶ 13. During that time, she repeatedly warned defendants about the Unit's problems with staff, security and patients. Complt. at ¶¶ 17, 18. Defendants never attempted to remedy the situation. Complt. at ¶ 18. In October 1982, plaintiff resigned from the Secure Unit and was assigned to another department. Complt. at ¶ 19. As a result of her reassignment, plaintiff lost her Team Leader title. Complt. at ¶ 20.

Meanwhile, conditions in the Secure Unit deteriorated. Complt. at ¶¶ 22, 24, 25. On March 5, 1984, Venegas was found dead. Complt. at ¶ 27. His death led to several investigations into the conditions at Creedmore. Complt. at ¶ 28. Plaintiff cooperated fully and honestly with the investigators, including a New York Times reporter.[1] Complt. at ¶¶ 29, 30. On June 7, 1984, as a result of her cooperation with investigators, plaintiff was reassigned, in a "sham" transfer, to the geriatric division. Complt. at ¶¶ 34, 37.

Shortly thereafter, plaintiff took a civil service examination for the new title of "Forensic Unit Chief." Complt. at ¶ 49. Plaintiff was ranked number one on the examination but was not given a Forensic Unit Chief's position. Complt. at ¶¶ 49, 50. She alleges that an unnamed defendant arranged to have her name removed from the list of applicants for such a position. Complt. at ¶ 50. Plaintiff subsequently asked to be reassigned to the Secure Unit. Complt. at ¶ 42. Her request was denied on the ground that it was not a position for a woman. Complt. at ¶ 42.

Plaintiff filed complaints with the New York State Division of Human Rights claiming discrimination on the basis of sex and retaliation for exercising her First Amendment rights. Complt. at ¶ 45.

Counts I and II of the present complaint allege Section 1983 claims for deprivation of plaintiff's liberty and property interests in her profession. Complt. at ¶¶ 53, 54. Count VI alleges, in part, a deprivation of

---

1. The New York Times published a critical article about Creedmore on June 17, 1984.

plaintiff's First Amendment rights.[2] Complt. at ¶ 58. Plaintiff also alleges a Title VII claim and three pendent State law claims. Complt. at ¶¶ 50, 55, 56, 57. She seeks injunctive relief, damages, declaratory relief and costs and disbursements. Complt. at ¶ 58. Plaintiff has named the following defendants: OMH and New York State officials in their official and individual capacities. Complt. at ¶ 58.

## I. Plaintiff's Federal Claims

Defendants move to dismiss plaintiff's Section 1983 claims against OMH and plaintiff's Title VII claim against all defendants.

### A. Plaintiff's Section 1983 Claims Against OMH

OMH argues that plaintiff's Section 1983 claims against it must be dismissed because States and their agencies are not "persons" for Section 1983[3] purposes. Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defendants' Memorandum") at p. 33, n. 17. Defendants' argument has heretofore been rejected by the United States Supreme Court but in any event we dismiss plaintiff's Section 1983 claims against OMH on Eleventh Amendment grounds. Quern v. Jordan, 440 U.S. 332 n. 7, 99 S.Ct. 1139 n. 7, 59 L.Ed.2d 358 (1979).

■ As a general rule, absent a legitimate abrogation of immunity by Congress, see Hutto v. Finney, 437 U.S. 678, 693–94, 98 S.Ct. 2565, 2575–76, 57 L.Ed.2d 522 (1978), or a waiver of immunity by the State being sued, the Eleventh Amendment bars federal law claims by individuals against a State or its agencies brought in federal courts. Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1351, 39 L.Ed.2d 662 (1974). Under the doctrine of Ex parte Young, however, the Eleventh Amendment does not bar suits for prospec-

tive injunctive relief, under federal law, against State officials in their official capacities. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In addition, the Eleventh Amendment does not bar actions in federal court against State officials in their individual capacities regardless of the remedy sought. Papasan v. Allain, —— U.S. ——, 106 S.Ct. 2932, 2939, 2940, 92 L.Ed.2d 209 (1986).

■ Plaintiff's Section 1983 claims against OMH are federal law claims against a State agency. As such they do not fall within the Young exception and will be barred unless Section 1983 constitutes a waiver of sovereign immunity. The Supreme Court has held that Section 1983 does not represent a waiver of Eleventh Amendment immunity. Edelman, 415 U.S. at 676, 94 S.Ct. at 1362. Therefore, plaintiff's Section 1983 claims against OMH are barred by the Eleventh Amendment.

Accordingly, Counts I and II against OMH are dismissed for lack of subject matter jurisdiction. Plaintiff's § 1983 claim alleged in Count VI is barred as against OMH on the same grounds.

### B. Plaintiff's Title VII Claim Against All Named Defendants

Defendants move to dismiss plaintiff's Title VII claim, 42 U.S.C. § 2000e et seq., for failure to allege receipt of a right to sue notice. Plaintiff requests a stay to enable her to obtain such a notice.

■ Before filing a Title VII claim, a plaintiff must file charges of discrimination with the EEOC or, in New York, with the State Division of Human Rights, receive a notice of the right to sue and timely commence his or her action in federal court. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). The requirement of a notice of right to sue is jurisdictional. Nevertheless,

---

**2.** Plaintiff originally filed a claim pursuant to 42 U.S.C. § 1985. This claim was withdrawn at oral argument.

**3.** Defendants originally moved to dismiss plaintiff's § 1983 claims as time barred, under a one-year statute of limitation. On April 6, 1987,

after defendants' motion to dismiss had been filed, the Second Circuit held that § 1983 claims were governed by a three-year statute of limitation. Okure v. Owens, 816 F.2d 45 (1987). As a result, defendants withdrew their statute of limitation argument.

the issuance of a notice of right to sue prior to trial might cure defects which might arguably exist. *See Wrighten v. Metropolitan Hospitals, Inc.,* 726 F.2d 1346 (9th Cir.1984).

 Accordingly, defendants' motion to dismiss plaintiff's Title VII claim is stayed for thirty (30) days from the date of this order, to permit plaintiff to obtain her notice of right to sue.

## II. *Pendent State Law Claims*

Plaintiff alleges three State law claims against all named defendants: (1) a claim for violation of Section 75–b of New York's Civil Service Law, (2) a claim for intentional infliction of emotional distress and (3) a claim for breach of plaintiff's collective bargaining agreement.

### A. *§ 75–b Claim Against OMH and The New York State Officials in Their Official Capacities*

Defendants OMH and New York State officials in their official capacities argue that plaintiff's claim pursuant to § 75–b of New York Civil Service Law against them is barred by the Eleventh Amendment.

Section 75–b, otherwise known as the "Whistleblower's statute," provides in pertinent part:

A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses [information] to a governmental body....

N.Y.Civ.Serv. Law § 75–b(2)(a) (McKinney Supp.1987).

 Under the doctrine of sovereign immunity, federal courts do not have jurisdiction over State law claims brought by individuals against a State, its agencies or its officials in their official capacities, regardless of the relief sought. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 99–100, 104 S.Ct. 900, 907–908, 79 L.Ed.2d 67 (1984). A State law claim against State officials in their official capacities will be construed as an action against the State. *Kentucky v. Graham,*

473 U.S. 159, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985), and thus barred by *Pennhurst.* A State may, however, consent to jurisdiction in federal court by waiving its sovereign immunity. Such a waiver must be expressed unequivocally. *Florida Department of Health v. Florida Nursing Home Ass'n,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981).

Plaintiff argues that New York State waived its sovereign immunity to § 75–b claims brought in federal court. In support of her argument, plaintiff refers this Court to Section 75–b(3)(c) of New York's Civil Service law, which gives an employee the right to commence a § 75–b claim in "any court of competent jurisdiction." Plaintiff's Memorandum at p. 12.

 The statute does not define the term "any court of competent jurisdiction." However, it does provide specific venue requirements for § 75–b actions. Employees may bring § 75–b claims "in the county in which the alleged retaliatory personnel action occurred, in the county in which the complainant resides, or in the county in which the employer has its principal place of business." N.Y.Lab.Law § 740(4)(b). Whereas federal courts are subdivided into judicial districts for venue purposes, New York State courts are subdivided into counties. By phrasing the venue provision in New York State venue terms, the State of New York waived its immunity to § 75–b suits only in New York State courts. New York's general waiver of immunity as stated in § 75–b(3)(c) clearly does not constitute an express waiver of immunity in federal courts. *See Florida Department of Health,* 450 U.S. at 150, 101 S.Ct. at 1034 (a contract between the State and the federal government, where the State promised to abide by federal law, was not sufficient to constitute an unequivocal express waiver of Eleventh Amendment immunity). Plaintiff has failed to refer this Court to any other specific provision expressly waiving New York's sovereign immunity. Therefore, in the absence of an express unequivocal waiver of immunity, plaintiff's § 75–b claim against OMH and New York State

officials in their official capacities is barred by *Pennhurst.*

Accordingly, Count III against OMH and New York State officials in their official capacities is dismissed for lack of subject matter jurisdiction.

### B. *§ 75–b Claim Against New York State Officials in Their Individual Capacities*

Section 75–b bars retaliatory action by public employers against employees for disclosing information to a governmental body. *See* N.Y.Civ.Serv.Law § 75–b (McKinney Supp.1987). Defendants argue that § 75–b does not create a cause of action against public employees in their individual capacity. Defendant's Memorandum at p. 37.

█ Section 75–b clearly defines and limits the class of defendants targeted by the statute. A "public employer"

> shall mean (i) the state of New York, (ii) a county, city, town, village or any other political subdivision or civil division of the state, (iii) a school district or any governmental entity operating a public school, college or university, (iv) a public improvement or special district, (v) a public authority, commission or public benefit corporation, or (vi) any other public corporation, agency, instrumentality or unit of government which exercises governmental power under the laws of the state.

N.Y.Civ.Serv.Law § 75–b(1)(a) (McKinney Supp.1987). Public employees in their individual capacities do not belong to the class of defendant defined by the statute. A public employee, regardless of rank, is not the employer of a fellow employee. Therefore, a public employee in his individual capacity may not be sued under § 75–b. In the absence of any State law precedent, and in light of the clear statutory language, this Court is unwilling to recognize an implied cause of action against public

employees in their individual capacities under § 75–b.

Accordingly, Count III against the New York State officials in their individual capacities is dismissed for failure to state a claim.[4]

### C. *Plaintiff's Claim for Breach of Her Collective Bargaining Agreement Against OMH and New York State Officials in Their Official Capacities*

OMH and New York State officials in their official capacities move to dismiss plaintiff's claim for breach of her collective bargaining agreement (Count V). They argue that Count V is a claim against the State for retroactive damages which is barred by the Eleventh Amendment. Defendants' Memorandum at p. 40.

█ For the reasons set forth in ¶ II(A), *supra*, plaintiff's breach of contract claim against OMH and New York State officials in their official capacities is barred regardless of the relief sought. *See Pennhurst*, 465 U.S. at 100, 104 S.Ct. at 908.

Accordingly, Count V is dismissed as against OMH and New York State officials in their official capacities.

### D. *Breach of Collective Bargaining Agreement Claim Against State Officials in Their Individual Capacities*

█ The Eleventh Amendment does not bar State law claims against State officials in their individual capacities. Therefore, however improbable, if plaintiff's collective bargaining agreement includes provisions imposing personal liability on New York State officials, Count V may state a breach of contract claim against the individual defendants in their individual capacities. The parties failed to provide the Court with a copy of the Collective Bargaining agreement. Thus, viewing the complaint in the light most favorable to plaintiff, we must

---

**4.** Plaintiff argues alternatively that § 75–b creates liberty and property interests constitutionally protected by the Due Process clause of the Fourteenth Amendment. U.S. Const. amend. XIV. Plaintiff's Memorandum at p. 13. There-

fore, her § 75–b claim against New York State officials in their individual capacities may be construed as a claim under 42 U.S.C. § 1983. This new § 1983 claim is not alleged in the complaint and thus will not be considered.

assume that a breach of contract claim exists. Accordingly, defendants' motion to dismiss Count V as against the New York State officials in their individual capacities is denied without prejudice to a motion for summary judgment by the defendants with evidence proving that no such claim exists against them in their individual capacities.

### E. Motion to Dismiss Plaintiff's Claim for Intentional Infliction of Emotional Distress Against All Defendants

Defendants move to dismiss plaintiff's claim for intentional infliction of emotional distress (Count IV) on the ground that plaintiff fails to state a claim upon which relief may be granted, Defendants' Memorandum at p. 45, or alternatively, because it is barred by the applicable statute of limitation. *Id.* at 42.

■ In New York, to establish a claim for intentional infliction of emotional distress, a plaintiff must show that defendant's conduct exceeded all bounds usually tolerated by decent society. *Fisher v. Maloney*, 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 993, 373 N.E.2d 1215, 1217 (1978). To survive a motion to dismiss for failure to state a claim, plaintiff must set forth extreme and outrageous conduct intentionally causing extreme emotional distress. *Murphy v. American Horn Products Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983).

Plaintiff claims that she was ostracized and isolated from the staff at Creedmore. Complt. at ¶ 38. She alleges that defendants engaged in a veritable campaign of harassment against her. She claims to have been falsely accused of time abuse, improperly denied her vacation and personal leave time and given unjustifiably poor evaluations. Complt. at ¶ 46.

■ In our opinion, the complaint merely alleges insults, indignities, annoyances and petty oppressions which do not constitute outrageous conduct. *See Restatement of Torts 2d* § 46[1]. Plaintiff's allegations therefore fall far short of the strict standard required to state a claim for intentional infliction of emotional distress.

*See Murphy*, 58 N.Y.2d at 303, 461 N.Y.S.2d at 236, 448 N.E.2d at 90. Accordingly, Count IV is dismissed without prejudice for failure to state a claim.

### CONCLUSION

In summary, defendants' motion to dismiss Counts I, II and VI as against OMH is granted. Defendants' motion to dismiss plaintiff's Title VII claim (Count VI) is stayed for thirty (30) days so that plaintiff may secure her right to sue letter from the EEOC. Counts III and IV are dismissed as against all defendants and Count V is dismissed as against OMH and the New York State officials in their official capacities. Defendants' motion to dismiss Count V as against the defendants in their individual capacities is denied.

SO ORDERED.